AO 120 (Rev. 08/10)

| TO:  Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____Southern District of Florida (Miami)_____ on the following

☐ Trademarks or   ☑ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>19-CV-25316-MGC | DATE FILED<br>12/30/2019 | U.S. DISTRICT COURT<br>Southern District of Florida (Miami) |
|---|---|---|
| PLAINTIFF<br><br>Warner Bros. Entertainment Inc. et al | | DEFENDANT<br><br>Cracco Jewelry, LLC et al |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1  See Complaint | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | |
|---|---|---|
| | ☐ Amendment     ☐ Answer     ☐ Cross Bill     ☐ Other Pleading | |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

DECISION/JUDGEMENT

| CLERK<br>Angela Noble | (BY) DEPUTY CLERK<br>/s Patrick Edwards | DATE<br>Dec 30, 2019 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy

Print       Save As...       Reset

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WARNER BROS. ENTERTAINMENT
INC., SANRIO COMPANY, LTD.
and SANRIO, INC.,

              Plaintiffs,

v.

CRACCO JEWELRY LLC d/b/a CRACCO
a/k/a CRACCOGLOBALLOGISTICS.COM,
ORLANDO J. SALAZAR d/b/a CRACCO
a/k/a CRACCOGLOBALLOGISTICS.COM,
MARTA M. SALAZAR a/k/a MARTHA M.
SALAZAR d/b/a CRACCO a/k/a
CRACCOGLOBALLOGISTICS.COM,
TOWER WHOLESALE, INC. d/b/a
CRACCO JEWELRY a/k/a
CRACCOJEWELRY.NET, YAMILETH
TORRES d/b/a CRACCO JEWELRY a/k/a
CRACCOJEWELRY.NET, and CRACCO
INDUSTRIA E. COMERCIO DE JOIAS
LTDA. d/b/a CRACCO a/k/a CRACCO
JEWELRY a/k/a CRACCO.COM.BR

              Defendants.

_____/

Case No.:

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, TRADEMARK
INFRINGEMENT, UNLAWFUL
IMPORTATION, AND UNFAIR
COMPETITION

## COMPLAINT

Plaintiffs Warner Bros. Entertainment Inc., Sanrio Company, Ltd. and Sanrio, Inc.

(collectively, "Plaintiffs") allege as follows:

## INTRODUCTION

1.        Plaintiffs file this action to combat the willful and intentional infringement of their copyrighted properties and trademarks by Defendants Cracco Jewelry LLC d/b/a Cracco a/k/a Craccogloballogistics.com, Orlando J. Salazar d/b/a Cracco a/k/a Craccogloballogistics.com, Marta M. Salazar a/k/a Martha M. Salazar d/b/a Cracco a/k/a Craccogloballogistics.com, Tower Wholesale, Inc. d/b/a Cracco Jewelry a/k/a craccojewelry.net, Yamileth Torres d/b/a Cracco Jewelry a/k/a craccojewelry.net and Cracco Industria E. Comercio De Joias Ltda. d/b/a Cracco a/k/a Cracco Jewelry a/k/a Cracco.com.br (collectively, "Defendants"). Defendants own and operate related wholesale and retail jewelry distribution businesses that manufacture, import, transport, sell, offer for sale, market, advertise, and otherwise distribute jewelry and accessories incorporating Plaintiffs' copyrighted and trademarked properties, all without the permission of Plaintiffs.

2.        Plaintiffs seek to halt Defendants' infringement of Plaintiffs' intellectual properties and seek a permanent injunction, damages, costs, and attorneys' fees as authorized by the Copyright Act, Lanham Act and Florida common law.

## JURISDICTION AND VENUE

3.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as Plaintiffs' cause of action arises under the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act") and the Federal Trademark Act, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"). Further, this Court has jurisdiction over Plaintiffs' Florida state common law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper within the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

THE PARTIES
PLAINTIFFS

5.      Warner Bros. Entertainment Inc. ("Warner Bros.") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California. Warner Bros., on its own behalf or through one of its wholly-owned operating subsidiaries, is engaged in a variety of businesses including, without limitation, the production, distribution and broadcast of filmed entertainment, including motion pictures and television programming.

A.      Warner Bros. is one of the largest and well-known producers and distributors of feature films in the world. Warner Bros.' subsidiaries include, but are not limited, to WB Studio Enterprises Inc. and Warner Bros. Consumer Products Inc.

B.      A significant aspect of Warner Bros.' business is the merchandising and licensing of distinctive copyrights associated with its media product, specifically including *Looney Tunes* animated shorts. The distinctive trademarks and copyrights licensed and/or merchandised by Warner Bros. Consumer Products Inc. include, but are not limited to, the world-famous characters featured in such programming and films, specifically including the characters *Tweety* and *Bugs Bunny* (individually and collectively, "Warner Bros. Characters").

3

C.     The revenue generated from products sold in the United States which use the Warner Bros. Characters is substantial. The appearance and other features of the Warner Bros. Characters are inherently distinctive and serve to identify Warner Bros. and its licensees as the source of products bearing the Warner Bros. Characters. The design, configuration and distinctive features of the Warner Bros. Characters and other Warner Bros. copyrighted works, and works related thereto (individually and collectively, "Warner Bros.' Copyrighted Designs") are wholly original with Warner Bros. and, as fixed in various tangible media, including merchandise, are copyrightable subject matter under the United States Copyright Act.

D.     Warner Bros. has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Warner Bros.' Copyrighted Designs, and Warner Bros. owns one or more certificates of registration for works in which each of Warner Bros.' Copyrighted Designs appear. A representative list of copyright registrations for Warner Bros.' Copyrighted Designs is indexed and attached hereto as Exhibit 1, and incorporated herein by reference.

E.     Warner Bros. and those acting under its authority have complied with their obligations under the copyright laws, and Warner Bros. has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Warner Bros.' Copyrighted Designs.

F.      Warner Bros. is the owner of world famous registered marks which serve to distinguish Warner Bros. products. Each year Warner Bros. spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality. A representative list of trademark registrations for the Warner Bros. Characters is indexed and attached hereto as Exhibit 2, and incorporated herein by reference (collectively, the "Warner Bros. Trademarks").

G.      The Warner Bros. Trademarks are all valid, extant and in full force and effect. The Warner Bros. Trademarks are all exclusively owned by Warner Bros. Warner Bros. has continuously used each of the Warner Bros. Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

H.      As a result of advertising and sales, together with longstanding consumer acceptance, the Warner Bros. Trademarks identify Warner Bros.' products and authorized retailers of these products. The Warner Bros. Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world. The Warner Bros. Characters, Warner Bros.' Copyrighted Designs and Warner Bros. Trademarks are collectively referred to herein as the "Warner Bros. Properties".

6.      Plaintiff, Sanrio Company, Ltd. ("Sanrio Co.") is a corporation organized and existing under the laws of the nation of Japan with its principal place of business located at 1-6-1 Osaki, Shinagawa ku, Tokyo 141-8603, Japan. Plaintiff, Sanrio, Inc.

("Sanrio") is a corporation, duly organized and existing under the laws of California, having its principal place of business in El Segundo. Sanrio is, and at all relevant times has been, the exclusive U.S. licensee of Sanrio Co., a Japanese corporation. Sanrio is a wholly-owned subsidiary of Sanrio Co.

      A.    For more than fifty (50) years, Sanrio Co. has been engaged in the business of manufacturing, distributing and selling a wide range of products featuring, without limitation, character artwork created, developed and designed by Sanrio Co. for use by children and adults. Certain characters and designs have achieved such global fame and popularity that Sanrio Co. has produced and distributed television programming for children based on the character artwork. One such television program is the animated television series entitled *Hello Kitty*.

      B.    A significant source of revenue for Sanrio Co. and Sanrio is the merchandising and licensing of distinctive elements bearing character artwork, including *Hello Kitty, Gudetama, Dear Daniel, Bad Badtz Maru, Chococat, KeroKeroKeroppi, Landy, Little Twin Stars, Monkichi, My Melody, Patty and Jimmy, Pekkle, Picke Bicke, Pochacco, Tuxedo Sam, Winkipinki, Kuromi, Charmmy Kitty,* and *Zashikbuta* (individually and collectively, "Sanrio Characters").

      C.    The business associated with products using the Sanrio Characters sold in the United States is substantial. The appearance and other features of the Sanrio Characters are inherently distinctive and serve to identify Plaintiffs as the source of products bearing the Sanrio Characters. The design, configuration and distinctive features of the Sanrio Characters and other Sanrio Co. copyrighted

works, and of works related thereto (individually and collectively, "Sanrio's Copyrighted Designs") are wholly original with Sanrio Co. and, as fixed in various tangible media, including, without limitation, Hello Kitty jewelry, accessories and related merchandise, are copyrightable subject matter under the Copyright Act. Sanrio Co. is the owner of exclusive rights to Sanrio's Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act.

D.    Sanrio Co. has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Sanrio's Copyrighted Designs and Sanrio Co. owns one or more certificates of registration for works in which each of Sanrio's Copyrighted Designs appear. A representative list of copyright registrations for Sanrio's Copyrighted Designs is indexed and attached hereto as Exhibit 1, and incorporated herein by reference.

E.    Products featuring Sanrio's Copyrighted Designs manufactured, sold and distributed by Sanrio Co. or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws. Sanrio Co. and those acting under its authority have complied with their obligations under the copyright laws and Sanrio Co. has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Plaintiffs' Copyrights.

F.      Sanrio Co. owns all right, title and interest in and to and holds exclusive right to develop, manufacture, market, and sell products bearing the trademarks, trade names, service marks, artwork, characters, and other distinctive elements for and incorporating the Sanrio Characters in the United States.

G.      Sanrio Co. is the owner of world-famous registered marks which serve to distinguish Sanrio Co. products.  Some of those trademarks have been used continuously for over twenty-five (25) years. Sanrio Co. has engaged in extensive advertising and marketing to develop and maintain the considerable good-will it enjoys in its trademarks and in its reputation for high quality. A representative list of trademark registrations for the Sanrio Characters is indexed and attached hereto as Exhibit 2, and incorporated herein by reference (collectively, "Sanrio Trademarks").

H.      Sanrio Trademarks are all valid, extant and in full force and effect. Sanrio's Trademarks are all exclusively owned by Sanrio Co. Sanrio Co. has continuously used each of the Sanrio Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

I.      As a result of advertising and sales, together with longstanding consumer acceptance, Sanrio Trademarks identify Sanrio Co.'s products and authorized sales of these products. The Sanrio Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and

the world.   The Sanrio Characters, Sanrio's Copyrighted Designs, and Sanrio's Trademarks are collectively referred to herein as "Sanrio Properties".

7.     The Warner Bros. Copyrighted Designs and Sanrio Copyrighted Designs will be collectively referred to as the "Plaintiffs' Copyrighted Designs". The Warner Bros. Trademarks and Sanrio Trademarks will be collectively referred to as the "Plaintiffs' Trademarks". The Plaintiffs' Copyrights and Plaintiffs' Trademarks will be collectively referred to as the "Plaintiffs' Properties".

DEFENDANTS

8.     Defendant,   Cracco   Jewelry   LLC   d/b/a   Cracco   a/k/a www.craccogloballogistics.com ("Cracco LLC"), upon information and belief, is an active limited liability company duly organized and existing under the laws of the State of Florida, with its principal place of business at 2305 NW 20th Street, Miami, FL 33142, and which conducts business in Florida and this District.

9.     Defendant,   Orlando   J.   Salazar   d/b/a   Cracco   a/k/a www.craccogloballogistics.com ("O. Salazar"), upon information and belief, is an individual residing at 5084 SW 129 Terrace, Miramar, FL 33027, and a manager and registered agent of Cracco LLC. O. Salazar is the moving, active and conscious force behind Cracco LLC, with the right and ability to supervise or control the infringing activity alleged herein, and direct financial interest in such activity.

10.     Defendant, Marta M. Salazar a/k/a Martha M. Salazar d/b/a Cracco a/k/a www.craccogloballogistics.com ("M. Salazar"), upon information and belief, is an individual residing at 5084 SW 129 Terrace, Miramar, FL 33027, and a manager of Cracco

LLC. M. Salazar is the moving, active and conscious force behind Cracco LLC, with the right and ability to supervise or control the infringing activity alleged herein, and direct financial interest in such activity.

11.     Defendant, Tower Wholesale, Inc. d/b/a Cracco Jewelry a/k/a www.craccojewelry.net ("Cracco Jewelry"), upon information and belief, is an active corporation duly organized and existing under the laws of the State of Florida, with its principal place of business at 17325 NW 78th Place, Miami, FL 33015, and which conducts business in Florida and this District.

12.     Defendant, Yamileth Torres d/b/a Cracco Jewelry a/k/a www.craccojewelry.net ("Torres"), upon information and belief, is an individual residing at 17325 NW 78th Place, Miami, FL 33015, and an officer of Cracco Jewelry. Torres is the moving, active and conscious force behind Cracco Jewelry, with the right and ability to supervise or control the infringing activity alleged herein, and direct financial interest in such activity.

13.     Defendant, Cracco Industria E. Comercio De Joias Ltda. d/b/a Cracco a/k/a Cracco Jewelry a/k/a www.cracco.com.br ("Cracco Brazil"), upon information and belief, is an active corporation duly organized and existing under the laws of the Brazil, located at R. Pinheiro Machado, 833- Tanner, Guapore – RS – Brazil 99200-000, which conducts business in Florida and this District.

14.     Defendants, Cracco LLC, O. Salazar, M. Salazar, Cracco Jewelry, and Torres will hereinafter collectively be referred to as the "Cracco Distributor Defendants".

The Cracco Distributor Defendants and Cracco Brazil will hereinafter collectively be referred to as "Cracco".

INFRINGING CONDUCT

15.     Cracco Brazil operates a jewelry manufacturing and distribution business in Brazil through which it manufactures, sells, offers for sale, markets, advertises, and otherwise distributes counterfeit and/or infringing jewelry which reproduces, simulates and/or copies the Plaintiffs' Properties without authorization ("Unauthorized Merchandise"). Cracco Brazil markets, advertises, sells, and offers for sale the Unauthorized Merchandise to buyers in U.S. through the Cracco Distributor Defendants located in Florida and this District. Cracco Brazil also markets, advertises, sells, offers for sale, and distributes Unauthorized Merchandise to buyers in Florida and this District through its own interactive website located at www.cracco.com.br (see Exhibit 3), as well as through a 'Cracco Joyas' branded shop on Amazon.com (see Exhibit 4) and various social media platforms including Facebook (see Exhibit 5), Instagram (see Exhibit 6) and Youtube (see Exhibit 7).

16.     The right side of the following chart shows representative, non-exhaustive examples of Cracco's Unauthorized Merchandise. The left side shows representative, non-exhaustive examples of Plaintiffs' Properties infringed by Cracco.

| PLAINTIFFS' PROPERTIES | CRACCO INFRINGING DESIGN |
|---|---|
| TXu 550-470<br><br>TXu 550-812<br><br>Registration No.: 1,306,114 | |
| TXu 550-812<br><br>Registration No.: 2,847,306 | |

| PLAINTIFFS' PROPERTIES | CRACCO INFRINGING DESIGN |
|---|---|
|  TXu 550-470  TXu 550-963  Registration No.: 1,291,403 |  |
|  Vau 1-078-385  Registration No.: 1,200,083 |  |

13

| PLAINTIFFS' PROPERTIES | CRACCO INFRINGING DESIGN |
|---|---|
| <br><br>Va 1-342-775<br><br><br><br>Registration No.: 1,200,083 |  |
| <br><br>Vau 1-078-385<br><br><br><br>Registration No.: 1,200,083 |  |

17.    Upon information and belief, Cracco imports and transports Unauthorized

Merchandise from Brazil to the United States to be marketed, advertised, sold, offered for

sale, and otherwise distributed by the Cracco Distributor Defendants. Cracco Brazil maintains a Federal Trademark Registration in conjunction with the CRACCO mark; Reg. No. 3,152,253 in Class 35 for retail sales services featuring jewelry. See Exhibit 8. Each of the Cracco Distributor Defendants operate their wholesale and retail jewelry businesses under the CRACCO service mark.

18.     Defendants, Cracco LLC, O. Salazar and M. Salazar, do business under the CRACCO and Cracco Jewelry service marks, and market, advertise, distribute, wholesale, sell, and offer for sale Unauthorized Merchandise through a physical store located at 2305 NW 20th Street, Miami FL 33142 (see Exhibit 9), and online through its commercial website, www.craccogloballogistics.com (see Exhibit 10), and Facebook page (see Exhibit 11).

19.     Defendants, Cracco Jewelry and Torres, maintain a Florida fictious name filing for 'Cracco Jewelry', do business the under CRACCO service mark and market, advertise, distribute, sell, and offer for sale the Unauthorized Merchandise online through the www.craccojewelry.net commercial website (see Exhibit 12), and various social media platforms, including Facebook (see Exhibit 13), Twitter (see Exhibit 14) and YouTube (see Exhibit 15). Upon information and belief, Cracco Jewelry and Torres knowingly provided false contact information to the domain name registrar for www.craccojewelry.net, which was used in connection with Cracco's infringing conduct as alleged herein. See Exhibit 16.

20.     Cracco, upon information and belief, operates a vertically integrated business model through which the Unauthorized Merchandise is manufactured in Brazil,

then imported and distributed throughout the United States by Cracco Brazil directly and through the downstream Cracco Distributor Defendants.

21. On or about July 16, 2019, Homeland Security Investigations ("HSI") visited Cracco LLC and determined that the business was selling various types of counterfeit jewelry products including the Unauthorized Merchandise. See Exhibit 17. Cracco LLC and O. Salazar, thereafter, voluntary abandoned to HSI, the counterfeit products including the Unauthorized Merchandise. See Exhibit 18. Upon information and belief, O. Salazar on behalf of Cracco LLC, represented that the Unauthorized Merchandise had been supplied to Cracco LLC by Cracco Brazil. O. Salazar further represented that the Unauthorized Merchandise was ordered from Cracco Brazil through Cracco Brazil's jewelry catalog, excerpts of which, showing the Unauthorized Merchandise, are attached hereto as Exhibit 19.

22. On or about August 29, 2019, Plaintiffs wrote to Cracco LLC and O. Salazar demanding that Cracco cease and desist in the further manufacture, importation, transportation, distribution, sale, offer for sale, marketing, and/or advertising of the Unauthorized Merchandise. See Exhibit 20. Neither Cracco Brazil nor the Cracco Distributors Defendants provided any response to Plaintiffs' lawful demands. Cracco Brazil and the Cracco Distributor Defendants continued to manufacture, import, transport, market, advertise, sell, offer for sale, and otherwise distribute the Unauthorized Merchandise.

23. On or about September 16, 2019, Plaintiffs wrote to Cracco LLC and O. Salazar a second time demanding that Cracco cease and desist in the further manufacture,

importation, transportation, distribution, sale, offer for sale, marketing, and/or advertising of the Unauthorized Merchandise. See Exhibit 21. Cracco Brazil and the Cracco Distributor Defendants provided no response to the second letter and continued to manufacture, import, transport, market, advertise, sell, offer for sale, and otherwise distribute the Unauthorized Merchandise.

24. On or about October 10, 2019, Cracco LLC's physical location was again found to be offering for sale Unauthorized Merchandise. On October 14, 2019, Cracco was found to be marketing, advertising, selling, offering for sale, and distributing Unauthorized Merchandise through its 'Cracco Joyas' shop on Amazon.com. Samples of the Unauthorized Merchandise purchased through the 'Cracco Joyas' shop on Amazon.com on this date are attached hereto as Exhibit 22.

25. Cracco is on notice of Plaintiffs' exclusive rights. Defendants' actions constitute willful and intentional violation of Plaintiffs' rights.

COUNT I - COPYRIGHT INFRINGEMENT
(17 U.S.C. § 501)

26. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

27. Plaintiffs own all right, title and interest in the Plaintiffs' Copyrighted Designs and Plaintiffs have complied in all respects with the provisions of the Copyright Act, and hold valid copyright registrations in the aforesaid Plaintiffs' Copyrighted Designs attached hereto as Exhibit 1.

28. Cracco is manufacturing, importing, transporting, distributing, advertising, marketing, offering for sale, and selling Unauthorized Merchandise that incorporate unauthorized reproductions and/or copies of the Plaintiffs' Copyrighted Designs, including but not limited to *Hello Kitty*, *Tweety* and *Bugs Bunny*.

29. Defendants have never been authorized to manufacture, import, transport, distribute, advertise, market, offer for sale, or sell Unauthorized Merchandise which incorporate Plaintiffs' Copyrighted Designs.

30. Defendants' conduct described above, infringes upon Plaintiffs' Copyrighted Designs. Defendants had, both actual and constructive, knowledge of Plaintiffs' exclusive rights. Each specific infringement of Plaintiffs' Copyrighted Designs can form the basis for a separate claim against Defendants under the Copyright Act.

31. Upon information and belief, Defendants' acts as alleged are willful infringements of, and have irreparably harmed, Plaintiffs' Copyrighted Designs, and threaten further infringements and irreparable harm to Plaintiffs' Copyrighted Designs. Further harm to Plaintiffs is imminent, and Plaintiffs are without an adequate remedy at law with respect to such harm. Unless Defendants' acts are enjoined and the illicit counterfeiters of Plaintiffs' Copyrighted Designs are stopped, it is highly probable that Defendants, or others under Defendants' direction will continue to market and sell Unauthorized Merchandise.

32. Defendants have obtained illicit profits as a result of their wrongful acts.

33. Plaintiffs are entitled, at their option, to statutory damages, as provided by 17 U.S.C. § 504, or actual damages including Defendants' profits.

## COUNT II - TRADEMARK INFRINGEMENT AND TRADEMARK COUNTERFEITING
### (15 U.S.C. §§ 1114, 1116)

34.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

35.     Plaintiffs own the exclusive rights to Plaintiffs' Trademarks indexed as Exhibit 2. All of the trademark registrations are in full force and effect. Many of Plaintiffs' Trademarks are incontestable pursuant to 15 U.S.C. § 1065.

36.     Plaintiffs, or those under their authority, manufacture and distribute all of Plaintiffs' advertising and products in conformity with the provisions of the United States trademark law.

37.     Notwithstanding Plaintiffs' well-known, prior common law and statutory rights, Cracco has, with actual and constructive notice of Plaintiffs' rights, adopted and used Plaintiffs' Trademarks in conjunction with the manufacture, import, transport, distribution, advertisement, marketing, offer for sale, and sale of Unauthorized Merchandise in the State of Florida and in interstate commerce.

38.     Cracco has manufactured, imported, transported, distributed, advertised, marketed, offered for sale, and sold Unauthorized Merchandise bearing Plaintiffs' Trademarks without Plaintiffs' authorization. Defendants' unauthorized use of the Plaintiffs' Trademarks, both in the State of Florida and in interstate commerce, has and will cause a likelihood of confusion, deception, and mistake as to Plaintiffs' affiliation with Defendants.

39.     Cracco's use in commerce of Plaintiffs' Trademarks in conjunction with Unauthorized Merchandise is an infringement of Plaintiffs' Trademarks in violation of 15 U.S.C. § 1114(1).

40.     Cracco willfully committed the acts alleged herein and/or with reckless disregard of Plaintiffs' rights.

41.     Said acts of infringement will cause irreparable injury to Plaintiffs if Defendants are not restrained by the Court from further violation of Plaintiffs' rights, as Plaintiffs have no adequate remedy at law.

42.     Plaintiffs have suffered damages as a result of Defendants' acts.

43.     The Unauthorized Merchandise bearing Plaintiffs' Trademarks that Defendants manufactured, imported, transported, distributed, advertised, marketed, offered for sale, and sold constitutes a counterfeit service pursuant to 15 U.S.C. § 1116(d)

## COUNT III – IMPORTATION OF GOODS BEARING INFRINGING MARKS
### (15 U.S.C. § 1124)

44.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

45.     Defendants have imported Unauthorized Merchandise bearing unauthorized reproductions, counterfeits, copies, and/or colorable imitations of the Plaintiffs' Trademarks in violation of 15 U.S.C. §1124.

46.     Defendants have realized gains and profits from the importation of the Unauthorized Merchandise bearing unauthorized reproductions, counterfeits, copies, and/or colorable imitations of the Plaintiffs Trademarks.

47.     Such conduct on the part of the Defendants has injured the Plaintiffs in an amount to be determined at trial, and caused and threatens to cause irreparable injury to Plaintiffs for which they have no adequate remedy at law.

### COUNT IV - UNFAIR COMPETITION UNDER THE LANHAM ACT
### (15 U.S.C. § 1125)

48.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

49.     As a direct result of Plaintiffs' longstanding use, sales, advertising, and marketing, Plaintiffs' Trademarks have acquired a secondary and distinctive meaning among the public who have come to identify the Plaintiffs' Trademarks with Plaintiffs and their affiliated companies.

50.     Defendants misappropriated Plaintiffs' Trademarks in order to confuse the public into believing that its conduct was authorized by the Plaintiffs.

51.     Defendants, by misappropriating and using the likenesses of Plaintiffs' Trademarks in connection with the manufacture, import, transport, distribution, advertisement, marketing, offering for sale, and selling of Unauthorized Merchandise are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their Unauthorized Merchandise.

52.     Defendants have caused such Unauthorized Merchandise to enter into interstate commerce willfully with full knowledge of the falsity of the designation of its origin, description and representation in an effort to mislead the purchasing public into believing that their Unauthorized Merchandise is authorized or emanates from Plaintiffs.

53.     These acts constitute a violation of Section 43 of the Lanham Act (15 U.S.C. § 1125).

54.     Defendants have obtained gains, profits and advantages as a result of their unlawful acts.

55.     Plaintiffs have suffered monetary damages as a result of Defendants' acts.

COUNT V - UNFAIR COMPETITION UNDER FLORIDA'S COMMON LAW

56.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

57.     Plaintiffs have expended significant sums of money in advertising and marketing, which feature their products and/or services, and in creating a consumer demand for such products and/or services in Florida and elsewhere in the United States. Consequently, these products and/or services have become widely known and accepted.

58.     Defendants have manufactured, imported, transported, distributed, advertised, marketed, offered for sale, and sold the Unauthorized Merchandise bearing exact copies of Plaintiffs' Properties in Florida, thereby passing it off as products and/or services authorized and/or distributed by Plaintiffs.

59.     Defendants have knowingly and willfully and/or with reckless disregard of Plaintiffs' rights, appropriated Plaintiffs' Properties in an effort to create the impression that Defendants' counterfeit services are sanctioned by Plaintiffs, and to misappropriate all of the goodwill associated with Plaintiffs' Properties.

60.     Defendants' acts constitute unfair competition and will, unless enjoined by this Court, result in the destruction or dilution of the goodwill in Plaintiffs' Properties and Plaintiffs' valuable trademark rights, and the unjust enrichment of Defendants.

61.     The Unauthorized Merchandise manufactured, imported, transported, distributed, advertised, marketed, offered for sale, and sold by Defendants is calculated and likely to deceive and mislead the purchasers in the belief that it originates with, or is authorized by, Plaintiffs.

62.     The continued passing off by Defendants of such Unauthorized Merchandise as if such products originated from Plaintiffs, have caused and unless restrained, will continue to cause serious and irreparable injury to Plaintiffs.

63.     Plaintiffs have no adequate remedy at law and suffer irreparable harm as a result of Defendants' acts.

64.     Plaintiffs have suffered damages as a result of Defendants' acts.

65.     Defendants committed the alleged acts intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure Plaintiffs and their businesses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants as follows:

1.     Permanent injunctive relief restraining Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them, from the following acts:

A.    Further infringing the Plaintiffs' Properties by importing, transporting, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, marketing, promoting, displaying, or disposing of the Unauthorized Merchandise;

B.    Using the Plaintiffs' Properties in any unauthorized manner, including any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the Plaintiffs' Properties, in the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation, or distribution of jewelry or related merchandise, in such a fashion as to relate or connect, or tend to relate or connect, such products in any way to the Plaintiffs;

C.    Making any false statement or representation to suggest that Defendants are affiliated with or sponsored by Plaintiffs;

D.    Engaging in any other activity constituting unfair competition with or an infringement of any of the Plaintiffs' Properties or constituting any dilution of Plaintiffs' name, reputation, or goodwill;

E.    Destroying or disposing of any evidence of Defendants' manufacture, importation, transportation, marketing, advertising, sale, offer of sale, or distribution of Unauthorized Merchandise or Defendants' unauthorized use of the Plaintiffs' Properties;

F.    Aiding, abetting, or contributing to the sale of Unauthorized Merchandise or the unauthorized use of the Plaintiffs' Properties; and

G.    Effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs A-F above;

2.    Directing that Defendants deliver for destruction all Unauthorized Merchandise, labels, signs, packaging, or advertising materials utilized in the manufacture, importation, transportation, marketing, advertising, sale, offering for sale, and distribution of the Unauthorized Merchandise, in their possession or control, bearing any of Plaintiffs' Properties or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, computer code, matrices, equipment, and other means of making or otherwise creating the Unauthorized Merchandise.

3.    Directing that Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show its compliance with Paragraphs 1-2 above.

4.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that Plaintiffs authorized or are related in any way to any products and/or services sold, offered for sale, advertised, or marketed by Defendants.

5.    Enter a finding that the Defendants are presumed to have willfully infringed upon the Plaintiffs' Properties as the Defendants knowingly provided, or

knowingly caused to be provided, materially false contact information to the domain name registrar for the one or more of the websites through which Defendants, sold, distributed, or offered for sale the Unauthorized Merchandise, as provide for by 17 U.S.C. § 504(c)((3)(A) and 15 U.S.C. § 1117(e).

6.      Awarding to Plaintiffs, as a result of Defendants' selling, offering for sale, advertising, or marketing of the Unauthorized Merchandise, three times Defendants' profits upon an accounting, or statutory damages, should Plaintiffs opt for such relief, consisting of Two Hundred Thousand Dollars ($200,000.00) for each of Plaintiffs' Trademarks infringed upon by Defendants, and to the extent this Court concludes such infringement was willful, Two Million Dollars ($2,000,000.00) for each of Plaintiffs' Trademarks infringed upon by Defendants pursuant to 15 U.S.C. §§ 1114, 1124 and 1117.

7.      Awarding to Plaintiffs, three times Defendants' profits, after an accounting, pursuant to 15 U.S.C. §§ 1124, 1125(a) and 1117(a).

8.      Awarding statutory damages, pursuant to 17 U.S.C. § 504, of no less than Seven Hundred and Fifty Dollars ($750.00) nor more than Thirty Thousand Dollars ($30,000.00) per copyrighted property infringed upon by Defendants, at the Court's discretion, or One Hundred and Fifty Thousand Dollars ($150,000.00) per infringement, upon a finding that Defendants' conduct was willful.

9.      Awarding to Plaintiffs their reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. § 1117.

10.      Awarding to Plaintiffs their costs in bringing this action.

11.     Awarding other such relief to Plaintiffs as this Court deems just.

Dated this 30th day of December 2019.

Michael W. O. Holihan
Florida Bar No.: 0782165
Kimberly A. Harchuck
Florida Bar No.: 0064852
Holihan Law
1101 North Lake Destiny Rd., Suite 275
Maitland, Florida 32751
Telephone: (407) 660-8575
Fax: (407) 660-0510
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Attorneys for Plaintiffs